KLIEBERT, Judge.
This suit arises out of the collapse on August 22, 1972 of a railroad trestle. A truck loaded with barrels of lube oil, ordered by and intended for the “Team Vega”, a boat chartered by National Molasses Company, lying alongside the wharf was driven onto the trestle by Shelton Arcement, an employee of Texaco, Inc. He was accompanied by Edgar Romaguera, another employee of Texaco. The railroad trestle led out to the wharf. The wharf and the trestle belonged to Southern Pacific Transportation Company. Upon the truck reaching a point over the Mississippi River, the trestle collapsed, causing the truck and the employees to fall into the water. Arcement was killed and Romaguera was injured.
Suits for damages were brought in federal court against Southern Pacific. A jury awarded damages of $391,000.00 to Arcement’s heirs, and $50,000.00 to Romaguera. An appeal was taken to the Federal Fifth Circuit Court of Appeal. The federal appeal court upheld the jury awards holding there was sufficient evidence for the jury to find negligence under Article 2315 of the Civil Code because Southern Pacific failed to keep vehicles from driving onto the railroad trestle which had the deceptive appearance of a vehicular roadway access to the wharf, but which was not designed or constructed to bear the weight of vehicles, such as the one involved in the accident here.
Southern Pacific paid the judgment rendered against it in the damage suits and now seeks from the defendant, National Molasses, indemnification or reimbursement of $531,769.12 paid on the judgments, $13,-482.00 cost of repairing the wharf, litigation expenses of $20,000.00, attorney fees of $25,000.00 for defending the original damage suits and $10,000.00 for the present suit or a total of $600,251.72. Southern Pacific advances several theories for recovery.
At the time of the accident, the “Team Vega” was under charter to National Molasses. The vessel was at the dock discharging molasses through a pipe line running beneath the trestle and wharf to tanks belonging to National Molasses. The tanks were located on land leased by National Molasses from Southern Pacific. The lease contained the following indemnification provision:
“With respect to any liability for loss, damage, injury or death arising from or incident to the use of the leased premises, each party agrees that it will assume and indemnify and hold harmless the other party against all liability, cost and expense caused by its actions or omissions (or the actions or omissions of its agents, contractors, employees or invitees) or by *453 defective property in its possession, care, custody or control. In the event of any combination of such factors involving both parties, each shall assume and will indemnify and hold harmless the other party against all liability, cost and expense for loss of or damage to property in its possession, care, custody or control, and for injury or death of its agents, contractors, employees or invitees, and any liability to third parties shall be equally divided between the parties hereto. For the purpose of this Section 13, any violation by Lessee of the provisions of Section 6 hereof shall be deemed the sole cause of any loss, damage, injury or death arising therefrom. The provisions of this Section 13 are solely for the benefit of the parties hereto and shall not give rise to a claim or cause of action by or affect the liability of any other person.”
Counsel for appellant argues that under the clear language of the indemnity agreement (cited above), Southern Pacific is held harmless against all liability resulting from National’s actions or omissions of National’s agents, contractors, employees, or invitees. Accordingly, it argues the negligence of National and/or the negligence of the Texaco employees (who are alleged to be invitees of National) was either the cause in fact of the accident or at least a contributing cause; therefore, Southern Pacific is entitled to indemnification from National under the indemnification provision of the lease. The evidence introduced at the trial did not support appellant’s theory.
Harris Baudoin was the road manager of Southern Pacific at the time of the accident. Baudoin testified that Southern Pacific did not allow vehicles other than trains over the wharf and trestle in question. According to his testimony, Southern Pacific kept a chain across the entrance to the trestle which led to the wharf, and only Southern Pacific train crews and maintenance people had keys to the chain.
James Phillips, III, Vice-President of National Molasses, testified his company did not lease either the wharf or trestle from Southern Pacific, nor did the defendant have control over or maintenance responsibilities of the wharf or trestle. Phillips also stated it was National’s policy not to allow trucks on the wharf.
Conrad Schexnayder, plant foreman at National Molasses in 1972, testified that it was National’s policy to inform the various agents and stevedores servicing the ships that they were not to make deliveries of supplies by truck, but did not recall if he had given this warning to the “Team Vega” on the day of the accident. Further, Schex-nayder recalled that on the date of the accident, the chain across the entrance to the wharf was up when he arrived on the morning of the accident; he noticed, however, it was down when he went to view the accident. Schexnayder stated he did not see any Southern Pacific employees in the area either prior to or after the accident.
Although it is not known who in fact took the chain down, counsel for Southern Pacific argues it is reasonable to assume it could not have been a Southern Pacific employee since there was none around and they had no reason to be there. Further, Southern Pacific argues the only reasonable hypotheses is that some employee of National or some crew member of the vessel took the chain down. We do not agree.
It is an elementary rule of law that one who asserts a fact must carry the burden of proving the same by a preponderance of the evidence. Meyer v. State, Department of Public Safety License Control and Driver Improvement Division, 312 So.2d 289 (La.1975). Proof by a preponderance of the evidence simply means taking the evidence as a whole, such proof shows the fact or cause sought to be proved is more probable than not. Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105 (1971). The trial court found no negligence on the part of National Molasses. A trial judge’s finding of fact is not to be disturbed in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We see no manifest error in the trial court ruling.
*454 Counsel for Southern Pacific contends that since the injured Texaco employees were invitees of National Molasses, Southern Pacific is entitled to indemnification under the lease agreement. He refers to the following facts established by stipulations to support his argument: The ship “Team Vega” was under charter to National Molasses. The officer of the vessel placed the order and requested delivery of the lube oil to the ship. At no time was National Molasses consulted by the crew of the ship relative to repairs, maintenance or operations of the ship or purchase of fuel and supplies. The Texaco employees were invitees of the “Team Vega”, i. e., the victims went upon the premises (albeit un-leased premises, but nevertheless, premises which “Team Vega” had permission to use) with the express invitation of the occupant for the mutual advantage of both, Texaco and the “Team Vega”. The ship being on charter to National Molasses, its relationship to National Molasses was that of a contractor. Therefore, the closest relationship which existed between the Texaco employees and National Molasses was that of an invitee of a contractor. This situation clearly does not come within the ambit of the indemnification agreement contained in the lease agreement.
Next, Southern Pacific contends the accident is within the ambit of the indemnification agreement insofar as it was an accident “arising from or incident to the use of the leased premises.” Southern Pacific admits the accident did not occur on the leased premises. However, its counsel contends that since the “Team Vega” was discharging National’s molasses through a pipeline running beneath the wharf and trestle into the tank on the leased premises, the discharging of molasses by the ship was an activity incident to the use of the leased premises.
We cannot agree. No evidence to show why the lube oil was delivered to the “Team Vega” was introduced. According to the stipulation, National Molasses had no knowledge of the order being placed for the oil or the contemplated delivery of the oil. There being nothing in the record to show the contemplated delivery of lubricating oil arose from or was incident to the use of the leased premises, then this theory falls.
Additionally, Southern Pacific argues the trestle which collapsed was under the possession and control of National at the time of the accident and for that reason, it should recover under the indemnification provisions. To support his position, counsel cites federal jurisprudence, holding that the means of ingress and egress to a ship, including the wharf at which it is docked, is an appurtenance of the ship. As an appurtenance of the ship, the vessel owes a duty of care of the wharf to the vessel’s business invitees.
The uncontroverted evidence shows Southern Pacific had the responsibility for the care and maintenance of the wharf. Additionally, the wharf was not included in the lease to National Molasses, nor did National Molasses have keys to the chain which controlled access to the wharf. Under those circumstances, we conclude, as did the trial court, that the trestle and wharf were in the care and control of Southern Pacific, not National Molasses.
Lastly, Southern Pacific advances the theory, apparently in the alternative, that both they and National Molasses were guilty of negligence which caused the accident and therefore, their liability shall be divided equally between them (as per the final sentence of the indemnification agreement). As discussed previously, Southern Pacific has not proved by a preponderance of the evidence that National Molasses was guilty of negligence. Therefore, any contribution by National Molasses would have to be based on interpretation of the indemnification agreement.
Southern Pacific was found to be negligent by the Federal District Court. The judgment has been affirmed. The prevailing rule in Louisiana regarding indemnification to a negligent indemnitee was stated by the Supreme Court in Green v. Taca International Airlines, 304 So.2d 357 (La. 1974), wherein it stated (at 361):
*455 “_a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. This rule is equally applicable whether the damage is caused by the sole negligence of the indemnitee or the concurrent negligence of the indemnitee and indemnitor.”
The indemnification agreement, above quoted, does not state that Southern Pacific will be indemnified for its own negligent acts. Rather, it states the opposite — that if the actions or omissions of National Molasses results in losses to Southern Pacific, then National Molasses will indemnify Southern Pacific for such losses. If their joint negligence causes the loss, then the losses are divided between them. No mention is made of indemnifying Southern Pacific for its own acts of negligence in the agreement.
For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.